# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

JUANA GINES,                          :
o/b/o C. A. DLC,                      :
                                      :
                Plaintiff             :        **No. 3:16-CV-0568**
                                      :
        vs.                           :        (Judge Nealon)
                                      :
NANCY A. BERRYHILL,[1] Acting         :
Commissioner of Social Security,      :
                                      :
                Defendant             :

# MEMORANDUM

On April 4, 2016, Plaintiff, Juana Gines on behalf of C. A. DLC,

(collectively "Plaintiff"), filed this instant appeal[2] under 42 U.S.C. § 405(g) for

review of the decision of the Commissioner of the Social Security Administration

("SSA") denying her application for supplement security income ("SSI") under

Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. (Doc. 1). The

---

1. Nancy A. Berryhill became the new Acting Commissioner of Social Security on January 23, 2017. See http://blog.ssa.gov/meet-our-new-acting-commissioner/. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for former Acting Commissioner, Carolyn W. Colvin, as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

parties have fully briefed the appeal. For the reasons set forth below, the decision of the Commissioner denying Plaintiff's application for SSI will be vacated.

## BACKGROUND

Plaintiff protectively filed[3] her application for SSI on March 6, 2013, alleging disability beginning on January 1, 2011, due to a combination of Bipolar Disorder and Attention Deficit Hyperactivity Disorder ("ADHD"). (Tr. 16).[4] This claim was initially denied by the Bureau of Disability Determination ("BDD")[5] on June 5, 2013. (Tr. 16). On August 5, 2013, Plaintiff filed a written request for a hearing before an administrative law judge. (Tr. 16). An oral hearing was held on October 7, 2014, before administrative law judge Reana K. Sweeney, ("ALJ"), at which Plaintiff and her mother testified. (Tr. 16). On December 2, 2014, the ALJ issued a decision denying Plaintiff's application for SSI. (Tr. 13-28). On January 2, 2015, Plaintiff filed a request for review with the Appeals Council. (Tr. 7-8).

_____

3. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

4. References to "(Tr. _)" are to pages of the administrative record filed by Defendant as part of the Answer on July 14, 2016. (Doc. 5).

5. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.

On February 3, 2016, the Appeals Council concluded that there was no basis upon which to grant Plaintiff's request for review. (Tr. 1-6). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Plaintiff filed the instant complaint on April 4, 2016. (Doc. 1). On July 14, 2016, Defendant filed an answer and transcript from the SSA proceedings. (Docs. 4 and 5). Plaintiff filed a brief in support of her complaint on August 29, 2016. (Doc. 6). Defendant filed a brief in opposition on November 2, 2016. (Doc. 9). Plaintiff did not file a reply brief.

Plaintiff was born in the United States on May 24, 2000, and at all times relevant to this matter was considered an "adolescent (20 C.F.R. §416.926a(g)(2)." (Tr. 227). Plaintiff can communicate in English. (Tr. 230).

In a document entitled "Function Report - Child Age 12 to 18" filed with the SSA on May 6, 2013, which was completed by Plaintiff's mother, it was indicated that Plaintiff's impairments: (1) limited daily activities; (2) limited the ability to communicate, noting she did not speak frequently with others and was not a friendly person; (3) caused limitations in her progress in understanding and using what she has learning, noting Plaintiff could not read and understand what she read, tell time, multiply and divide numbers over ten (10), understand money, or understand, carry out, and remember simple instructions; (4) affected her social

activities and behavior with people, noting she could not make new friends or participate in team sports; (5) limited her ability to take care of her personal needs and her safety, noting she did not wash and put away her laundry, help around the house, get to school on time, study and do homework, take needed medications, use public transportation by herself, accept criticism or correction, keep out of trouble, obey rules, or avoid accidents; and (6) limited her ability to pay attention and stick with a task, noting Plaintiff could not finish what she started, complete homework, or complete chores most of the time.  (Tr. 241-247).

On May 28, 2013, a teacher named Kristen Hartsock, who had been Plaintiff's teacher for homeroom,literacy, and geography, completed a Teacher Questionnaire.  (Tr. 253-259 ).  Initially, the teacher noted Plaintiff missed a day of school, usually every week.  (Tr. 253).  The teacher indicated that Plaintiff had slight problems with the following: comprehending oral instructions; understanding and participating in classroom discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; recalling and applying previously learned material; paying attention when spoken to directly; focusing long enough to finish assigned activities or work; refocusing to task when necessary; carrying out multi-step instructions; changing from one (1) activity to another without being disruptive;

organizing her own things or school materials; completing work accurately without careless mistakes; and working without distracting self or others. (Tr. 254-255). The teacher indicated that Plaintiff had an obvious problem with the following: comprehending and doing math problems; applying problem-solving skills in class discussions; and working at a reasonable pace/ finishing on time. (Tr. 254-255). The teacher also indicated that Plaintiff had a serious problem completing class and homework assignments daily. (Tr. 255). The teacher indicated that Plaintiff had no problems interacting and relating with others, moving about and manipulating objects, or caring for herself. (Tr. 256-258). The teacher noted that Plaintiff was quiet, did not participate in class, seemed to have depression, was withdrawn from school work, and took medicine that made her feel sick. (Tr. 254, 259).

At the oral hearing on October 7, 2014, Plaintiff testified that she had to repeat the second grade and that she was currently in a regular eighth grade classroom at Rowland Elementary School. (Tr. 36). She stated that she had problems concentrating, that she did not incur any suspensions or discipline, was taking her medications in the morning, was not attending counseling even though it was recommended she do so, had to go to summer school after seventh grade in order to progress to eighth grade, received some failing grades in eighth grade, did

not have "a lot" of friends at school and had none outside of school, did not go outside much, and had not missed school thus far during her eighth grade. (Tr. 36-40).

Plaintiff's mother also testified on behalf of Plaintiff. She indicated that Plaintiff had not been taking Lithium after she moved from New York to Harrisburg because doctors said Plaintiff "was too young to be diagnosed with bipolar disorder." (Tr. 42). She testified that she began taking Lithium again in November 2013, and that she had only gone two (2) days without taking her medication. (Tr. 42-43). Plaintiff's mother testified that she received "mobile treatment" in which Plaintiff would be removed from class for therapy. (Tr. 43). She indicated Plaintiff's hobbies included painting, singing, and walking. (Tr. 43-44, 48). She stated Plaintiff did not have friends over to visit, aside from her cousin she saw every day. (Tr. 44). Plaintiff's mother indicated that she believed her daughter was disabled from March 2013 to the date of the hearing because she was not social. (Tr. 45). Plaintiff's mother noted that in May 2014, Plaintiff had been hospitalized for two (2) weeks after becoming aggressive and starting a fight with her father. (Tr. 48). She indicated that her daughter seemed depressed some of the time, and happy, helpful, and creative some of the time. (Tr. 49). She stated that when depressed, Plaintiff would paint "not very nice" things including "eyes

and blood," and that she did not get along with her siblings.  (Tr. 49).

## MEDICAL RECORDS

On March 27, 2013, Plaintiff had an appointment at Pressley Ridge.  (Tr. 273).  Her Axis I diagnoses were Bipolar Disorder, most recent manic, and ADHD.  (Tr. 273).  Plaintiff's medications included Methylphenidate.  (Tr. 273).  Her strengths were listed as "sweet, smart, loves to play games, supportive family."  (Tr. 273).  It was noted that Plaintiff had anger outbursts and was noncompliant.  (Tr. 273).  Her treatment goals were listed as being able to demonstrate compliance with adults, decrease her anger outbursts to once a week for only five (5) minutes, demonstrate good self-esteem by increasing positive self-statements by ninety percent (90%), and to participate in cognitive behavioral therapy.  (Tr. 273-274).

On March 28, 2013, Plaintiff underwent a Psychiatric Diagnostic Interview with Lance Dunlop, M.D.  (Tr. 275-276).  Plaintiff's self-reported symptoms included impulsivity, poor concentration, difficulty focusing, intermittent depression associated with irritability, poor sleep latency, increased appetite, weight gain, intermittent past thoughts of death and dying, and intermittent feelings of guilty and fatigue.  (Tr. 275).  It was noted that Plaintiff did not experience loss of milestones or developmental delay and had never required

7

special education. (Tr. 275). A mental status examination revealed: a mildly endomorphic body habitus; attentiveness; cooperation; a linear, logical, and goal-directed thought process; a euthymic affect; a good fund of knowledge; normal speech; good insight; and intermittent poor judgment as evidenced by difficulty in maintaining impulse control. (Tr. 276). Her diagnoses included ADHD and Major Depressive Disorder. (Tr. 276). It was recommended that Plaintiff restart Methylphenidate for ADHD and start fluoxetine for Major Depressive Disorder, continue individual psychotherapy, and schedule a follow-up appointment within two (2) weeks. (Tr. 276).

On May 14, 2013, Plaintiff underwent a psychological evaluation at Ponessa performed by David Baker, Psy.D. (Tr. 305-314). It was noted that Plaintiff: had presenting issues that were mood instability, opposition, and defiance; was late to school on a daily basis because she did not want to eat breakfast at school; did not participate or complete work in class; slept in class; had difficulties getting along with peers and was often argumentative with them; had a history of burning herself at age eight (8); was not compliant with her medications, including Concerta and Prozac, noting she experienced side effect such as headaches and stomachaches; cycled through periods of hypermania and hypomania where she would be energetic and happy and then depressed and irritable; was mildly

aggressive with her sister; demonstrated opposition and defiance across settings; did not comply with directives or rules and was increasingly defiant if she felt she was being "nagged" to complete tasks; had more prevalent problematic behaviors when she was depressed; had anxiety related to social interactions and peer relationships; did not want to talk to others; and missed at least a day of school per week. (Tr. 305-309). The evaluator completed the Child and Adolescent Needs and Strengths ("CANS") form, with a "zero" meaning no evidence for concern, a "one" indicating mild concern, a "two" indicating moderate concern, and a "three" indicating severe concern. (Tr. 309). Plaintiff was rated at a one for attention deficit and impulse, sleep, family, interpersonal strengths, relationship permanence, well-being, talents and interests, inclusion, resiliency, and resourcefulness. (Tr. 309-311). Plaintiff was rated at a two for depression and anxiety, oppositional behavior, school achievement, school behavior, school attendance, and educational strengths. (Tr. 309-311). Plaintiff's mental status examination revealed: casual dress and adequate grooming; spontaneous and responsive facial expressions; an irritable, agitated affect consistent with a labile mood; appropriate eye contact and attention to the evaluator without prompting; unimpaired communication; unremarkable motor skills; coordinated ambulation; a relaxed posture; appropriate activity level; grossly intact cognition; orientation to

person, place, and time; no impairment in reality testing; and poor interpersonal skills. (Tr. 311-312). Plaintiff's diagnosis was Mood Disorder. (Tr. 313). It was recommended, for a six (6) month period, Plaintiff attend mobile therapy for twelve (12) hours per month and that she have an updated psychological evaluation in six (6) months. (Tr. 314). It was noted that regular educational curriculum may not be "the most appropriate placement for her." (Tr. 314).

On May 29, 2013, a Childhood Disability Evaluation was completed by Soraya Amanullah, Ph.D., based on the records up to that date. (Tr. 55). Dr. Amanullah opined Plaintiff had severe impairments under Impairment Listings 112.11, ADHD, and 112.04, Mood Disorder, but that the impairments did not meet, medically equal, or functionally equal the Listings because Plaintiff had: (1) no limitations acquiring and using information, moving about and manipulation of objects, caring for herself, or with her health and physical well-being; and (2) less than marked limitations attending and completing tasks and interacting and relating with others. (Tr. 55).

On July 26, 2013, Plaintiff had an appointment with T.W. Ponessa and Associates Counseling Services, Inc. (Tr. 281). It was noted that Plaintiff's diagnoses included a Mood Disorder. (Tr. 281). It was noted Plaintiff liked painting, dancing, and singing, and had a supportive family committed to her care,

growth, and development. (Tr. 281). It was noted that Plaintiff had difficulties related to mood instability and poor anger control, with her mother stating her mood ranged from being happy, talkative, energetic, and very motivated to being depressed, angry, irritable, and agitated. (Tr. 282). It was also noted that Plaintiff, when depressed, would become irritable with her family if they tried to help her, that she showed a mild aggressive tendency towards her sister, that she displayed opposition and defiance across settings, that she did not comply with directives and rules, that she became increasingly defiant if she felt she was being nagged to complete tasks, that she experienced anxiety related to social interactions and peer relationships, that she was shy and did not want to talk to others, that she avoided social interactions and remained isolated, was argumentative and gave others "nasty" looks, that she did poorly academically and had to repeat sixth grade, that her school attendance was irregular with her missing at least a day out of every week of school, that she made somatic complaints in order to stay home from school, that she was twenty (20) minutes late to school on a daily basis because she did not want to eat breakfast at school, that she did not participate in school or complete her work, that she slept in class, that she had difficulties getting along with peers, that she had been held back in the second grade, that she had significant difficulties in socializing as she was verbally aggressive and displayed

intimidating behaviors with peers at school up to ten (10) times a week and was physically aggressive towards her siblings on a weekly basis, and that she had difficulty with compliance at home and in school because she did not want to comply with directives and rules and became increasingly defiant if she felt she was being nagged, . (Tr. 282-290). Her prescribed medications were listed as Concerta and Prozac. (Tr. 283). Plaintiff's treatment goals were, in seven (7) out of ten (10) opportunities, to: learn to express her feelings positively and effectively; identify and gain insight into her sources of depression and name them when inquired; identify and utilize coping skills for her depression; comply with adult directives, rules, and expectations within two (2) prompts; learn about and identify friendship-relationship building qualities; display positive social interactions with peers, siblings, and family members by utilizing friendship building qualities and conflict resolution; and learn about positive communication skills and conflict resolutions. (Tr. 286-292). It was recommended that Plaintiff receive twelve (12) hours of "mobile treatment" therapy per month. (Tr. 292).

On November 21, 2013, Plaintiff had a psychiatric evaluation performed by Jose Montaner, M.D., for assessment of the partial hospitalization program at Pennsylvania Psychiatric Institute. (Tr. 322). It was noted that Plaintiff: was highly irritable and argumentative; "talked back" at school and at home; was

suspended from school for running in the hallway and skipping class; was disrespectful towards students, teachers, and her family; had fluctuating moods; had a quick temper; became angry with loud noises, when things were taken from her, and when others touched her face or bothered her interpersonal space; did not like to be told what to do or be interrupted; became annoyed when others repeated themselves; did not like to be teased; had been suspended several times since September 2013; played with lighters; became quite irritable and sad quickly; put herself down when frustrated; slept to feel better; was unsure if her family loved her; did not finish what she started; procrastinated; and had difficulty switching from what she liked to do to that which she did not like to do. (Tr. 322-323). A mental status examination revealed: orientation to person, place, and time; appropriate speech; no evidence of a thought disorder in terms of formal content; an angry affect; intact recent and remote memory; an adequate fund of information; poor insight and judgment; and an average intelligence. (Tr. 323). Plaintiff was diagnosed with ADHD and Mood Disorder, was started on Lithium and Concerta, and was referred to adolescent partial hospitalization. (Tr. 323).

From November 22, 2013, through December 11, 2013, Plaintiff was referred to "partial hospital" at the Pennsylvania Psychiatric Institute due to increased fights at school and at home. (Tr. 321). It was noted that Plaintiff: was

not doing her homework; was suspended for aggressive behavior; had a fluctuating mood; had been off medication since the summer; was highly irritable and suspicious of those around her; did not engage in the therapeutic process; refused to work or participate in groups; was diagnosed with ADHD and Mood Disorder; and was placed on medications, including Lithium and Concerta with toleration without side effects. (Tr. 321). It was recommended by Dr. Montaner that: Plaintiff undergo psychoeducational testing to evaluate the level of emotional support she needed and to rule out a learning disability; that a crisis plan be developed; that she participate in social skills group/ anger management group; that she meet with a guidance counselor at school until her "IEP is in place"; and that she should continue to receive eight (8) hours of mobile therapy a month and receive four (4) hours a month with a behavioral specialist consultant. (Tr. 321).

On May 9, 2014, Plaintiff underwent a psychological re-evaluation at Ponessa performed by David Baker, Psy.D. (Tr. 294-304). The following was noted: (1) Plaintiff demonstrated slight progress with low goal attainment; (2) Plaintiff was non-compliant with her medication; (3) at the time of the her previous evaluation, her teachers reported that she wandered around the classroom, refused to sit, did not follow instructions, did not keep her hands to herself, often touched others, did not complete any work, refused to follow

instructions, was a daily disruption to the classroom, was failing many classes, and had few friends; and (4) had significant difficulties getting along with peers with no desire to talk to others and frequent arguments with peers. (Tr. 295-297). Her prescribed medications included Concerta for ADHD and Lithium for Bipolar Disorder. (Tr. 297). The following were her CANS scores for her evaluations in November 2013 and at this appointment: a consistent rating of "two" for depression, anxiety, oppositional behavior, anger control, family functioning, living situation, social functioning with peers, and school behavior; a decrease in score from a "three" to a "zero" for remorse and "three" to a "two" for school achievement; a decrease from a "two" to a "zero" for fire setting and response to accusation and a decrease from "two" to "one" for resources; an increase from "zero" to a "two" for social behavior; an increase from a "one" to a "two" for physical and behavioral health and family strengths; a consistent rating of "one" in relationship permanence; an increase from "zero" to a "one" for knowledge and organization; and a consistent rating of "zero" for supervision, involvement, and residential stability. (Tr. 300-301). A mental status examination revealed: a casually dressed and well-groomed appearance; spontaneous and responsive facial expressions; a constricted affect; a dysthymic mood; appropriate eye contact and attention to the evaluator; average intelligence; unimpaired communication;

unremarkable motor skills; coordinated ambulation; a relaxed posture; an appropriate activity level; grossly intact cognition; orientation to person, place, and time; and impaired insight, impulse control, and judgment.  (Tr. 301-302). Plaintiff was diagnosed with Bipolar Disorder with currently unstable moods, and it was recommended that she continue participating in Behavioral Health Rehabilitation Services in the form of mobile therapy for twelve (12) hours per month for the period of June 4, 2014 through December 3, 2014  (Tr. 303-304).  It was also noted that regular educational curriculum "may not be the most appropriate placement for her" and it was recommended that Plaintiff undergo an updated psychological evaluation within six (6) months.  (Tr. 304).

From May 19, 2014 through May 30, 2014, Plaintiff was hospitalized due to a crisis situation after Plaintiff physically attacked her father and destroyed property in their home when her mother instructed her to go to bed.  (Tr. 315-320, 331).  She was discharged with the instruction to take her medications, including Concerta for ADHD and Lamictal for Depression.  (Tr. 317).

On September 11, 2014, Plaintiff had an appointment with Dr. Montaner. (Tr. 327-329).  It was noted Plaintiff: was highly irritable; had been able to focus, concentrate, and get work done; was recently experiencing increased irritability, being easily angered, and a low frustration tolerance; had mild "ups and downs"

with heightened irritability; exhibited verbal and physical aggression; was able to listen and follow directions; ignored others when she was doing her work; and was doing her work on time. (Tr. 327). It was noted from earlier visits on February 26, 2014, April 3, 2014, and July 3, 2014 that Plaintiff had improved mood swings, concentration, attention, and impulsivity. (Tr. 329). A mental status examination revealed: good eye contact; normal speech; a euthymic and irritable mood; intact associations; normal attention and motor activity; appropriate thought content; a goal-directed thought process; fair insight and judgment; and orientation to time, person, and place. (Tr. 327). It was noted that Plaintiff had been compliant with her medications, including Lithium and Concerta. (Tr. 328). Plaintiff was diagnosed with ADHD and Bipolar Disorder and was instructed to continue on her medications at their current doses. (Tr. 328-329).

## STANDARD OF REVIEW

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those

findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual

record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**THREE-STEP EVALUATION PROCESS**

To qualify for SSI benefits under the Act, a minor claimant must demonstrate that he or she is "disabled" within the meaning of 42 U.S.C.

§1382c(a)(3)(C)(I), which provides that,

> An individual under the age of 18 shall be considered disabled
> for the purposes of this subchapter if that individual has a
> medically determinable physical or mental impairment, which
> results in marked and severe functional limitations, and which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12
> months.

An examiner makes a three-step evaluation, found in 20 C.F.R. §§ 416.924,

416.926a, to determine whether a claimant under the age of eighteen (18) is

disabled, and thus entitled to SSI benefits. At step one, if the claimant is engaged

in substantial gainful activity, he is not disabled. If the claimant is not engaged in

a substantial gainful activity, the examiner then proceeds to step two at which he

or she must determine whether the physical or mental impairment is "severe." At

step three, if the impairment is severe, the examiner determines whether the

impairment meets, medically equals, or functionally equals an impairment listing

found in 20 C.F.R. §404, Subpart P, App. 1.

To determine whether an impairment functionally equals a listed

impairment, the examiner considers how a minor functions in six (6) domains: (1)

acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating objects;

(5) caring for self, and; (6) health and physical well-being. See 20 C.F.R.

§416.926a(b)(1). An impairment functionally equals a listing level impairment if there are "marked" limitations in two (2) of the six (6) domains, or if there is an "extreme" limitation in one (1) domain. See 20 C.F.R. §416.926a(d). A "marked" limitation seriously interferes with a plaintiff's ability to independently initiate, sustain, or complete activities. See 20 C.F.R. §416.926a(e)(2)(i). An "extreme" limitation is more than "marked" and very seriously interferes with a plaintiff's ability to independently initiate, sustain, or complete activities. See 20 C.F.R. §416.926a(e)(3)(i).

## ALJ DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity from her alleged onset date of March 6, 2013. (Tr. 19).

At step two, the ALJ determined that Plaintiff suffered from the following medically determinable impairments: "ADHD and affective disorder. (20 C.F.R. 416.924(c))." (Tr. 19).

At step three of the sequential evaluation process, the ALJ determined the following: "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926)." (Tr. 19). The ALJ also determined that Plaintiff did not have an impairment or

combination of impairments that "functionally equal the severity of the listings (20 CFR 416.924(d) and 416.926(a)" because she had marked limitations in only one (1) category.  (Tr. 20).

Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date of March 6, 2013, and the date of the ALJ's decision.  (Tr. 28).

## DISCUSSION

On appeal, Plaintiff asserts the following: (1) the ALJ erred at "disregarding or discounting the opinion testimony of [Plaintiff]'s treating physicians"; (2) the ALJ erred in finding that she did not meet Impairment Listing 112.04, Mood Disorders, and/ or Impairment Listing 112.11, ADHD; and (3) the ALJ's determination that Plaintiff and her mother were not entirely credible was not adequately explained.  (Doc. 6, pp. 4-14).  Defendant disputes these contentions. (Doc. 9, pp. 8-15).

### 1.    Opinion Evidence and Impairment Listings Determination

Plaintiff argues that the ALJ erred in disregarding or discounting the opinion evidence provided by Plaintiff's treating physician, Dr. Baker, because she did not discuss the opinions rendered by him in May and November 2013 and May 2014 in regards to the CANS scores; more specifically, Plaintiff asserts that

the ALJ effectively ignored the fact that Dr. Baker rated Plaintiff at a "three" in the area of school achievement, which means Plaintiff had severe limitations in this area. (Doc. 6, pp. 5, 9). Plaintiff also asserts, in part, that the ALJ's failure to acknowledge these opinions then led to an improper decision that Plaintiff did not functionally meet the Impairment Listings involved because a severe concern in the category of school achievement would render her with a marked limitation in the functional category of attending and completing tasks. (Id. at 14). Such a marked limitation combined with the opined marked limitation with interacting with and relating to others would mean Plaintiff would have met the "B" criteria for the Impairment Listings, which would mean she was disabled.

The preference for the treating physician's opinion has been recognized by the Third Circuit Court of Appeals and by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). This is especially true when the treating physician's opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged time." Morales, 225 F.3d at 317; Plummer, 186 F.3d at 429; see also 20 CFR § 416.927(d)(2)(i)(1999) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

However, when the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d 316-18. It is within the ALJ's authority to determine which medical opinions he rejects and accepts, and the weight to be given to each opinion. 20 C.F.R. § 416.927. The ALJ is permitted to give great weight to a medical expert's opinion if the assessment is well-supported by the medical evidence of record. See Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 961 (3d Cir. 2006) (holding that there was substantial evidence to support the ALJ's RFC determination that the plaintiff could perform light work, even though this determination was based largely on the opinion of one medical expert, because the medical expert's opinion was supported by the medical evidence of record); Baker v. Astrue, 2008 U.S. Dist. LEXIS 62258 (E.D. Pa. Aug. 13, 2008).

Regardless, the ALJ has the duty to adequately explain the evidence that he rejects or to which he affords lesser weight. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009) (holding that because the ALJ did not provide an adequate explanation for the weight he gave to several medical opinions, remand was warranted). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." In re Moore v. Comm'r of Soc. Sec., 2012

U.S. Dist. LEXIS 100625, *5-8 (D.N.J. July 19, 2012) (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000)).

In accordance with the aforementioned case law, the ALJ did have the duty to adequately explain, in her decision, why she rejected or discounted the opinions rendered in the form of CANS scores by Plaintiff's treating physician, Dr. Baker, because these were medical opinions that were part of the record. (Tr. 294-314). Because the ALJ did not discuss or adequately discount or reject Dr. Baker's opinions in her decision, in consideration of applicable statutes and precedent, it is determined that the ALJ's analysis at step three of the sequential evaluation process is flawed.

Furthermore, because a teacher is not an acceptable medical source, and thus his or her opinion is not entitled to significant weight, the ALJ erred in giving significant weight to the to opinion of Plaintiff's teacher, Kristen Hartsock, in determining how functionally severe Plaintiff's impairments were for the requisite Listings. See 20 C.F.R. § 416.913(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment."); (Tr. 253-259).

Lastly, the ALJ erred in relying on the opinion of the state agency physician, Dr. Amanullah, because it was rendered in May 2013, and thus was not based on a

review of Plaintiff's entire medical record that occurred after the opinion was rendered, including a partial hospitalization, hours of mobile therapy, almost an entire school year which included several school suspensions due to Plaintiff's mental health impairments, medication treatment, and a hospitalization for eleven (11) days after Plaintiff physically assaulted her father. (Tr. 55, 282-290, 294-322); See Sassone, 165 F. App'x 954, 961 (3d Cir. 2006) (holding that there was substantial evidence to support the ALJ's RFC determination that the plaintiff could perform light work, even though this determination was based largely on the opinion of one medical expert, because the medical expert's opinion was supported by the medical evidence of the entire record).

As such, because the ALJ failed to discuss the opinions of Plaintiff's treating physician, Dr. Baker, and improperly accorded significant weight to the opinion of Plaintiff's teacher and the state agency physician in determining whether Plaintiff's severe impairments functionally equaled the requisite Impairment Listings, substantial evidence does not support the ALJ's decision at Step Three that Plaintiff's impairments, namely Bipolar Disorder and ADHD, did not functionally meet the requisite Impairments Listings. This Court declines to address Plaintiff's remaining allegations of error, as remand may produce a different result on this claim, making discussion of them moot. Burns v. Colvin,

156 F. Supp. 3d 579, 598 (M.D. Pa. Jan. 13, 2016); <u>see</u> <u>LaSalle v. Comm'r of Soc.</u>

<u>Sec.</u>, Civ. No. 10-2011 U.S. Dist. LEXIS 40545, 1096, 2011 WL 1456166, at *7

(W.D. Pa. Apr. 14, 2011).

## <u>CONCLUSION</u>

Based on the aforementioned discussion, remand under 42 U.S.C.

§ 405(g) is warranted. Plaintiff's appeal will be granted, the case will be

remanded to the Commissioner for further proceedings, judgment will be entered

in favor of Plaintiff and against Defendant, and the Clerk of Court will be directed

to close this matter.


**DATE**: November 15, 2017          **/s/ William J. Nealon**
                                     **United States District Judge**